UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| GARNETT GIBSON, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 08-118-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| AMERICAN MINING INSURANCE ) | **AND ORDER** |
| CO., et al., ) | |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Pending before the Court is the plaintiffs' Motion to Remand, R. 9. Multiple defendants filed responses in opposition to the plaintiffs' Motion, *see* R. 19 (American Mining Insurance Company and Genevieve Stanley), R. 20 (American Empire Surplus Lines Insurance Company), & R. 21 (Larry Clevinger), and the plaintiffs filed a reply, R. 31. The Court held oral argument on the motion on August, 14, 2008, R. 36. For the reasons given below, the Court **GRANTS** the plaintiffs' motion to remand.

I.  BACKGROUND

A vehicle in which the plaintiffs Topsie Gibson and Roger Russell were riding collided with an overturned coal truck, killing Gibson and injuring Russell. R. 9, Memo. in Support at 2. Gibson's estate and Russell filed a personal injury and wrongful death action in Knott Circuit Court on March 22, 2005, against Fuel Transport, Inc. and Troy Vanderpool, R. 20 at 2, who appear to be the owner and driver, respectively, of the overturned coal truck. Russell's claim settled before trial for $70,000, while a jury awarded Gibson's estate approximately $4.1 million. R. 9, Memo. in Support at 4. Fuel Transport and Vanderpool have appealed that verdict. *Id.*

Subsequent to the personal injury and wrongful death action, Gibson's estate and Russell filed the present suit on May 7, 2008, in Knott Circuit Court against American Mining Insurance Company (Fuel Transport's primary insurer), Larry Clevinger (a claims adjuster for American Mining), Genevieve Stanley (a second claims adjuster for American Mining), American Empire (Fuel Transport's excess insurer), and Dianne Williams (a claims adjuster for American Empire). *Id.* at 6. The plaintiffs allege that the defendants engaged in "unfair claims settlement practices and other bad faith conduct and violations of law [that] was knowing, willful, wanton, intentional, reckless, and fraudulent" in connection with the underlying personal injury and wrongful death action. R. 1, Attach. 3 ¶ 8. In the complaint, the plaintiffs seek: (1) compensatory damages, (2) punitive damages, (3) pre-judgment and post-judgment interest, (4) all costs, fees, and expenses incurred in the prosecution of this and the previous action not already recovered, and (5) all other relief to which they may be entitled in law or equity. *Id.* at *ad damnum* clause. In compliance with Ky. R. Civ. P. 8.01[1], the plaintiffs did not specify the amount of unliquidated damages they sought.

The defendants filed their Notice of Removal on June 5, 2008, asserting diversity jurisdiction as the basis for removal. R. 1 ¶ 1. The defendants acknowledged that the plaintiffs and certain defendants (Larry Clevinger and Genevieve Stanley) are Kentucky citizens, *id.* at ¶ 9(a), (d), but they alleged that Clevinger and Stanley's citizenship should be ignored for diversity purposes because the plaintiffs fraudulently joined them to this action, *id.* at 6–8. The plaintiffs filed their Motion to Remand on July 14, 2008, arguing that the amount in controversy would not exceed $75,000 and that

---

[1] In relevant part, Ky. R. Civ. P. 8.01(2) states, "[i]n any action for unliquidated damages the prayer for damages in any pleading shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish the jurisdiction of the court."

Clevinger and Stanley were not fraudulently joined. R. 9, Memo. in Support at 10–24. The plaintiffs also attached the affidavit of Roger Russell in which he states that he will not accept more than $75,000 for his claims. *Id.* at Attach. 2. Because this Court is persuaded that the action was not removable, the case will be remanded to state court.

## II.  AMOUNT IN CONTROVERSY

The amount in controversy will always be at issue when a case is removed to federal court on the basis of diversity jurisdiction because the case is not removable if it does not satisfy the amount-in-controversy requirements for diversity jurisdiction under 28 U.S.C. § 1332. In this case, it appears as though Gibson's estate has satisfied the amount-in-controversy requirement while Russell has not. Therefore, there can be no diversity jurisdiction over Russell's claims. Additionally, although this Court need not — and does not — reach the issue, it also appears as though there can be no supplemental jurisdiction over Russell's claims since 28 U.S.C. § 1367(b) precludes the exercise of supplemental jurisdiction over claims asserted by plaintiffs against persons made parties under Rule 20 of the Federal Rule of Civil Procedure when doing so is inconsistent with the requirements of diversity jurisdiction. Without any basis for exercising jurisdiction over Russell's claims, the case would have to be remanded. To see why this is so, it will be helpful to review the law applicable to removal.

The removal statute provides that a case cannot be removed from state court to federal court unless it is a civil action "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A federal district court's original jurisdiction extends to those claims that could be initiated on their own in federal court pursuant to a specific grant of constitutional and statutory

authority.[2] In order for a case to constitute a civil action of which the district courts have original jurisdiction, it is not necessary for each claim to fall within the court's original jurisdiction; instead, it is enough if a single claim falls within the parameters of original jurisdiction, *see Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997). Thus, a case with at least one claim within the court's original jurisdiction constitutes a "civil action" removable under § 1441(a) even if the case also involves claims outside the court's original jurisdiction. A problem is posed, however, by those removed claims that do not fall within the federal court's original jurisdiction. Because federal courts are courts of limited jurisdiction, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), they cannot hear any claim without specific constitutional and statutory authority to do so. For claims falling outside of the original jurisdiction of the federal courts, such authority is present under the doctrine of supplemental jurisdiction if the claims comply with the requirements of 28 U.S.C. § 1367. If supplemental jurisdiction can be exercised over those claims, then the court to which the case has been removed has jurisdiction over each claim and can therefore hear the case. But, if supplemental jurisdiction is not available for the claims falling outside the court's original jurisdiction, then it will not have jurisdiction over each claim. In that event, the entire case would be remanded to state court.[3] *See Lowery v. Prince George's County, Md.*, 960 F. Supp. 952, 957 (D. Md. 1997); 14C

---

[2] This is in contrast to claims falling within the federal courts' supplemental jurisdiction, which are claims that cannot be brought in federal court on their own. These claims are only cognizable in federal court when they are joined with, and constitute part of the same case or controversy as, claims falling within the federal courts' original jurisdiction. *See* 28 U.S.C. § 1367; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

[3] This Court is aware that in *Henry v. Metro. Sewer Dist.*, 922 F.2d 332 (6th Cir. 1990), the Sixth Circuit affirmed a district court's decision to retain jurisdiction over an individual-capacity § 1983 claim even though the district court found that the Eleventh Amendment

CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3739 (3d ed. 1998). This makes sense in light of the Supreme Court's holding that the propriety of removal "depends on whether the *case* originally could have been filed federal court," *Int'l Coll. of Surgeons*, 522 U.S. at 163 (emphasis added), not on whether a particular claim in a case could have been filed in federal court. It also makes sense from the standpoint that the plaintiff is master of his complaint, and if he includes claims that are not removable, it would be unfair and a waste of resources to make him litigate in two different fora. In the interests of comity and judicial resources, it is preferable to leave these cases to state courts.

When removal is premised solely on the federal courts' diversity jurisdiction pursuant to 28 U.S.C. § 1332, as it is here, the removing party has the burden of demonstrating that the requirements of § 1332 are satisfied. *See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (stating that the burden is on the removing party to prove that the federal court has subject matter jurisdiction over the removed case (citing *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996))). This requires a showing of complete diversity — which means that there can be neither a plaintiff and a defendant who are both citizens of the same state, *see Exxon Mobil Corp.*, 545 U.S. at 553, nor a plaintiff and defendant who are both citizens of a foreign country, *see*

---

prevented it from having subject matter jurisdiction over a joined § 1983 claim that asserted claims against state officials in their official capacities. *See id.* at 338–39. However, *Henry* is distinguishable from this case. After the Supreme Court's decision in *Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381, 389 (1998), it is clear that the Eleventh Amendment only presents a jurisdictional bar to a claim when it is asserted by a state as a defense. Thus, Eleventh Amendment immunity can be waived and therefore does not automatically deprive federal courts of subject matter jurisdiction. In other words, when a claim against a state otherwise falls within the original jurisdiction of the federal district courts, the claim is cognizable in federal court unless and until the state asserts the Eleventh Amendment as a defense. In contrast, when there is no basis for original jurisdiction, the court lacks jurisdiction ab initio.

*Peninsula Asset Mgmt. (Cayman), Ltd. v. Hankook Tire Co., Ltd.*, 509 F.3d 271, 272–73 (6th Cir. 2007) — and that at least one claim meets the amount-in-controversy requirement of $75,000,[4] *see Exxon Mobil Corp.*, 545 U.S. at 559.  Putting aside for the moment the issue of complete diversity, it is clear that the amount-in-controversy requirement is problematic in this case.  The defendants have presented substantial evidence showing that the claims of Gibson's estate satisfy the amount-in-controversy requirement.  However, they have not done so with respect to Russell's claims.  Therefore, while the claims of Gibson's estate appear to satisfy the amount-in-controversy requirement, Russell's claims do not.  Thus, assuming for the sake of argument that there is complete diversity, this Court could only exercise jurisdiction over this case if Russell's claims fall within this Court's supplemental jurisdiction.

By arguing that each plaintiff must independently satisfy the amount-in-controversy requirement, the plaintiffs implicitly argue that supplemental jurisdiction is not available for Russell's claims.  However, in *Exxon Mobil Corp.*, the Supreme Court held that as long one claim satisfies the amount-in-controversy requirement, federal courts can exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over additional claims that do not meet the amount-in-controversy requirement.  *Exxon Mobil Corp.*, 545 U.S. at 566–67.

Specifically, Section 1367(a) provides:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other

---

[4] It is important to note that complete diversity is required for the entire case, whereas the amount-in-controversy requirement is only required for at least one claim.  Unlike the amount-in-controversy requirement, a lack of complete diversity cannot be cured by supplemental jurisdiction because a lack of complete diversity contaminates every claim in a case, thereby depriving the district court of original jurisdiction over the entire action.  *See Exxon Mobil Corp.*, 545 U.S. at 553-54.

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

As the *Exxon Mobil* court acknowledges, the broad grant of supplemental jurisdiction contained in § 1367(a) is conditioned on the exceptions provided in subsections (b) and (c). *Exxon Mobil Corp.*, 545 U.S. at 557–58. Subsection (b) is particularly important here because, in cases where original jurisdiction is premised solely on 18 U.S.C. § 1332, it prohibits the exercise of supplemental jurisdiction "over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b). In this case, the defendants have been made parties under Rule 20 of the Federal Rules of Civil Procedure,[5] and the exercise of supplemental jurisdiction over the Russell's claims would be inconsistent with the requirements of § 1332 because those claims do not satisfy the amount-in-controversy requirement. Therefore, § 1367(b) would appear to preclude the exercise of supplemental jurisdiction over Russell's claims, which means that this Court would have to remand the case due to a lack subject matter jurisdiction over every claim asserted by the plaintiffs.

However, granting the plaintiffs' motion to remand on this ground would create tension with

---

[5] The Court recognizes that there is a debate as to whether parties joined prior to removal can be considered "persons made parties under Rule 20 of the Federal Rules of Civil Procedure." At least one commentator takes the position that parties joined prior to removal cannot be considered "persons made parties under Rule 20 of the Federal Rules of Civil Procedure" since those persons were literally made parties under the analogous state joinder rule, rather than Rule 20 of the Federal Rules. *See* Joan Steinman, *Supplemental Jurisdiction in § 1441 Removed Cases: An Unsurveyed Frontier of Congress' Handiwork*, 35 Ariz. L. Rev. 305, 330-33 (1993). The Court, however, has been unable to find any support for this position among federal courts.

*Engstrom v. Mayfield*, 195 F. App'x 444 (6th Cir. 2006).[6] In that case, several plaintiffs who did not satisfy the amount-in-controversy requirement argued that the district court should exercise supplemental jurisdiction over their claims against the two defendants, who were clearly joined under Rule 20. *Id.* at 446. In an unpublished opinion, the Sixth Circuit agreed with the plaintiffs and held that supplemental jurisdiction could be exercised over the claims of the plaintiffs who did not meet the amount-in-controversy requirement because there was at least one plaintiff who did meet that requirement. *See id.* at 448. In reaching this decision, the court relied on *Exxon Mobil*, but made no mention of either § 1367(b) or the statement in *Exxon Mobil* that supplemental jurisdiction in diversity cases is limited by § 1367(b). *See id.*

Despite the Sixth Circuit's unpublished opinion in *Engstrom*, it appears that in cases where original jurisdiction is premised on § 1332, § 1367(b) would preclude the exercise of supplemental jurisdiction over claims asserted against defendants joined under Rule 20 when those claims do not satisfy the amount-in-controversy requirement. Nevertheless, because the plaintiffs' motion for remand can be sustained solely on the lack of complete diversity, it is unnecessary for the Court to decide whether this case should be remanded on the ground that each plaintiff does not satisfy the amount-in-controversy requirement. Therefore, the Court does not reach this issue.

### III. FRAUDULENT JOINDER

The defendants argue that the citizenship of Clevinger and Stanley, the two Kentucky defendants, should be ignored for diversity purposes because they were fraudulently joined to this action. R. 1 at 6–8. However, because the plaintiffs have a colorable basis for at least some of the

---

[6]Unpublished decisions of the Sixth Circuit are not binding under the doctrine of stare decisis. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007). Accordingly, the Court considers such decisions for their persuasive value only. *See id.*

claims that they have asserted against Clevinger and Stanley, this Court cannot find that the defendants have met their heavy burden of proving fraudulent joinder. Therefore, the case lacks complete diversity and must be remanded.

### A. Standard

To determine whether a non-diverse defendant is fraudulently joined, the Sixth Circuit has instructed courts to ask whether the plaintiff has a colorable basis for his claims against the defendant. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). To answer that question, the following standard should be used:

> There can be no fraudulent joinder unless it [is] clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law . . . . Therefore the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. [Restated,] the question [is] whether there was any reasonable basis for predicting that [the plaintiff] could prevail.

*Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 406–07 (6th Cir. 2007) (alterations in original) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).

The defendants, as the removing party, have the burden of demonstrating fraudulent joinder. *Alexander*, 13 F.3d at 948–949. Any doubts as to whether fraudulent joinder applies are resolved against removal. *Coyne*, 183 F.3d at 493. Similarly, any disputed questions of fact and any ambiguities in the applicable state law should be resolved in favor of the plaintiffs, as the non-removing party. *Id.* The burden of proving fraudulent joinder is even more stringent than the motion to dismiss standard under Fed. R. Civ. P. 12(b)(6). *Hartley v. CSX Transp. Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) ("[The fraudulent joinder] standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); *Batoff v. State Farm Ins.*

*Co.*, 977 F.2d 848, 852 (3d Cir. 1992) ("But the inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder.").

**B.     Analysis**

Bearing in mind the fraudulent joinder standard, the issue before the Court is whether the plaintiffs have a colorable basis under Kentucky law for their claims against Clevinger and Stanley. The first step, therefore, is determining what claims the plaintiffs assert against Clevinger and Stanley.

The plaintiffs' Complaint asserts claims for "unfair claims settlement practices and other bad faith conduct and violations of law," including "KRS 304.12.010, KRS 304.12-230, and 806 KAR 12:095" in connection with the underlying personal injury and wrongful death action.[7]  R. 1, Attach. 3 ¶¶ 7–8. The plaintiffs filed an Amended Complaint in this action, though it asserts the same basic claims as the original Complaint. R. 11 ¶ 7.

Section 304.12-230 (also referred to as the Unfair Claims Settlement Practice Act "UCSPA"), makes it an unfair claims settlement practice for any person to commit or perform one of fifteen specified acts or omissions.[8] Ky. Rev. Stat. § 304.12-230. The plaintiffs do not indicate which of the fifteen unfair claims settlement practices apply here. At its heart, however, the plaintiffs' Complaint appears to allege bad faith action on the defendants' part, *see* R. 9, Memo. in Support at

---

[7] As discussed below, the Court concludes that the plaintiffs have a colorable basis for their bad faith claims against Clevinger and Stanley. For this reason, the Court need not address any of the other claims asserted by the plaintiffs against these two defendants.

[8] Section 304.1-020 defines "person" as "an individual, insurer, company, association, organization, Lloyd's insurer, society, reciprocal insurer or inter-insurance exchange, partnership, syndicate, business trust or corporation, and every other related legal entity." Ky. Rev. Stat. § 304.12-230. Thus, the plain language of the statute does not preclude claims against individual claims adjusters like Clevinger and Stanley. Indeed, the defendants conceded this point at the hearing.

10

6 (referring to their complaint as a "bad faith Complaint"); *id.* at 9 (referring to their claims as "bad faith claims"); *id.* at 19–20 (discussing bad faith causes of action), and the plaintiffs confirmed this at the hearing. Bad faith action by an insurer violates the UCSPA, *see* § 304.12-230(6), and also constitutes a Kentucky common law tort, *see Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky. 2000) (stating that Kentucky has recognized common-law and statutory bad faith actions). Thus, the plaintiffs' claims are most fairly interpreted as bad faith claims under both the UCSPA and common law.[9]

Kentucky law is ambiguous as to whether such claims can be asserted against individual claims adjusters like Clevinger and Stanley. Both sides of the debate can point to authority in support of their position. Such ambiguity clearly calls for remand because ambiguities in the applicable state law are to be resolved in favor of the non-removing party. *See Alexander*, 13 F.3d at 949. Stated differently, the ambiguities in Kentucky law provide the plaintiffs with an arguably reasonable basis for predicting that they could prevail on their bad faith claims against Clevinger and Stanley. Therefore, these claims are colorable, and the joinder of Clevinger and Stanley was not fraudulent.

The ambiguity in Kentucky law regarding bad faith claims stems largely from the decision of the Kentucky Supreme Court in *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2000). In *Davidson*, an accident occurred between a tractor-trailer owned by American Freightways, Inc. (AFI) and a tractor-trailer owned by Joseph Davidson. *Id.* at 95. Though AFI carried insurance, its deductible was $250,000 and thus was self-insured up to that amount. *Id.* Rather than rely on its insurance coverage, AFI investigated, negotiated, and ultimately paid the claims by Davidson out of

---

[9] The requirements for establishing bad faith are the same under both the common law and the UCSPA. *See Davidson*, 25 S.W.3d at 100. For ease of reference, the Court will refer to the plaintiffs' common law and statutory bad faith claims collectively as bad faith claims.

its own money. *Id.* Davidson then filed suit against AFI, alleging bad faith in settling the claims. The trial court granted summary judgment in favor of AFI, and the appellate court affirmed. *Id.* The Kentucky Supreme Court granted discretionary review to "consider whether the Unfair Claims Settlement Practices Act (the UCSPA), KRS 304.12-230, and/or the so-called tort of 'bad faith' apply to persons or entities who are either self-insured or uninsured." *Id.* The court concluded that such entities were not subject to the UCSPA or the common law bad faith tort because both apply "only to persons or entities engaged in the business of insurance." *Id.* at 95–96. The court, therefore, affirmed the decision in favor of AFI. *Id.*

Clearly then, the question of whether a colorable bad faith claim can be made against Clevinger and Stanley boils down to whether or not they are persons engaged in the business of insurance. The *Davidson* opinion itself sends conflicting signals on this issue. On the one hand, the court appears to suggest that being "engaged in the business of insurance" requires engaging in the business of entering into contracts of insurance or being insured when it stated, "[n]othing in any of [the Kentucky insurance statutes] evidences a legislative intent that the Kentucky Insurance Code was designed to regulate persons who are neither insured nor engaged in the business of entering into contacts of insurance." *Id.* at 98. Because Clevinger and Stanley are not the insureds nor do they enter into insurance contracts, this portion of *Davidson* suggests that bad faith claims do not apply to them.

At the same time, however, the *Davidson* court appeared to suggest that claims adjusters could be engaged in the business of insurance because of their involvement in the negotiation and settlement of claims. In interpreting the scope of the UCSPA, the court looked to applicable Kentucky insurance regulations and stated that the "comprehensive regulatory scheme applies only

to insurance companies and their agents in the negotiation, settlement, and payment of claims made against policies, certificates or contracts of insurance." *Id.* Claims adjusters likely would be involved in the negotiation, settlement, and payment of claims. As such, the *Davidson* court arguably left the door open for bad faith liability for claims adjusters.

A ground on which both sides claim support is the court's statement that "[a]bsent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Id.* at 100. In their briefs and at the hearing, the defendants rely heavily on this statement: because Clevinger and Stanley have no contractual obligation to the plaintiffs (based on the fact that the insurance company, not the claims adjusters, entered into the insurance contracts with Fuel Transport) they are not subject to a bad faith claim. *See* R. 19 at 13–14 & R. 20 at 18–19. The plaintiffs argue, however, that this statement does not go as far as the defendants would like it to. As they see it, the *Davidson* court did not say that the contractual obligation has to exist between the plaintiff and defendant; it just said there has to be a contractual obligation. R. 34 at 21. Thus, the argument goes, as long as there is a contractual obligation (such as the insurance policy between the defendants and Fuel Transport), a bad faith action can be brought against other persons (such as the individual claims adjusters).[10] *Id.*

Lastly, a statement at the end of the *Davidson* opinion further muddies the waters regarding

---

[10] Plaintiffs' reasoning on this point applies equally to the defendants' argument that the plaintiffs cannot satisfy the elements of a bad faith claim against Clevinger and Stanley because they have no contractual obligation to pay any claims. *See* R. 19 at 13–14. The elements of a bad faith action are: "(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Davidson*, 25 S.W.3d at 100. While the elements require a contractual obligation, just as *Davidson* does, the elements do not specify that the contractual obligation exist between the plaintiff and defendant.

claims adjusters' liability for bad faith claims. The court stated, "we thus hold that the UCSPA and the tort of 'bad faith' apply only to those persons or entities (**and their agents**) who are 'engaged . . . in the business of entering into contracts of insurance.'" *Davidson*, 25 S.W.3d at 102 (quoting Ky. Rev. Stat. § 304.1-040) (emphasis added). This statement could suggest that agents of entities entering into contracts are subject to bad faith claims.

Cases interpreting *Davidson* have only deepened the ambiguity as to whether a bad faith claim can be asserted against an individual claims adjuster. At least two Kentucky district courts following *Davidson* have addressed — with conflicting results — the question of whether an insurance claims adjuster was fraudulently joined to an action involving bad faith claims.[11] In *Brown v. A.I.N., Inc.*, No. 08-30, 2008 WL 819072 (W.D. Ky. Mar. 25, 2008), Chief Judge Heyburn denied the plaintiff's motion to remand because he concluded there was no colorable basis for a bad faith claim against the insurance adjuster. *Id.* at *3. Chief Judge Heyburn relied on *Davidson*, concluding that bad faith actions apply only to entities "'engaged in the business of *entering into contracts of insurance*.'" *Id.* at *2 (quoting *Davidson*, 25 S.W.3d at 98).

Judge Forester reached the opposite conclusion in *Wright v. Allstate Insurance Co.*, No. 03-

---

[11] Judge Hood also has addressed this issue in the two pre-*Davidson* cases of *Winburn v. Liberty Mutual Insurance Co.*, 933 F. Supp. 664 (E.D. Ky. 1996), and *Winburn v. Liberty Mutual Insurance Co.*, 8 F. Supp. 2d 644 (E.D. Ky. 1998). In the first *Winburn* case, Judge Hood held that the plaintiffs had not fraudulently joined a claims adjuster based on the absence of clear state law on whether the UCSPA applied to such individuals. *Winburn*, 933 F. Supp. at 667. After the defendants removed the case a second time, Judge Hood held that the plaintiffs had fraudulently joined the claims adjuster because the facts–as evidently developed after the initial *Winburn* decision remanding the case–showed there was no reasonable basis to hold the claims adjuster liable. *Winburn* 8 F. Supp. 2d at 649. These cases, however, pre-date the Kentucky Supreme Court's decision in *Davidson*. In a post-*Davidson* case, *Neace v. Safe Auto Ins. Co.*, No. 08-143, 2008 WL 2152002, at *2–3, *2 n.3 (E.D. Ky. May 21, 2008), Judge Hood dismissed a plaintiff's bad faith claim against a claims adjuster because he viewed *Davidson* as requiring an insurance contract between the plaintiff and the claims adjuster for such a claim.

501 (E.D. Ky. Mar. 5, 2004). R. 9, Attach. 3. He recognized *Davidson* but stated that it "does not directly speak to the question of whether a claims adjuster may be sued under the [UCSPA]." *Id.* at 4. Moreover, he suggested that *Davidson* arguably could be interpreted to support liability for claims adjusters for bad faith claims, noting that the *Davidson* court looked to Kentucky insurance regulations in interpreting the UCSPA and that those regulations apply "only to insurance companies and their agents in the negotiation, settlement, and payment of claims made against policies, certificates or contracts of insurance." *Id.* (quoting *Davidson*, 25 S.W.3d at 98). Because claims adjusters likely would be involved in the negotiation, settlement, and payment of claims, Judge Forester opined that, "[u]nder this interpretation of *Davidson*, claims adjusters could be considered 'persons' in the 'business of insurance,' and thus subject to the strictures of the Act." *Id.* Because of this ambiguity and the parties' concession that no Kentucky case was directly on point, Judge Forester held that the plaintiff had not fraudulently joined the claims adjuster and thus remanded the case because the "question of whether or not the [UCSPA] restrains and regulates the actions of individual claims adjusters is still unresolved." *Id.*

Additionally, in the factually distinguishable yet legally analogous case of *Ray Jones Trucking, Inc. v. Kentucky Automobile Insurance Plan*, No. 3:07-cv-15, 2007 WL 1309616 (E.D. Ky. May 4, 2007), Judge Caldwell reached a decision that seems to support Judge Heyburn's decision in *Brown*. *Ray Jones* involved fraudulent joinder in the context of the UCSPA, but the claims were not against a claims adjuster. Rather, the plaintiff asserted those claims against the insurance company and the Kentucky Automobile Insurance Plan–which was a "statutorily mandated residual market mechanism," *i.e.*, it appears to arrange insurance coverage for individuals and entities who cannot obtain coverage through normal market mechanisms. *Id.* at *1. The Kentucky Automobile Insurance

15

Plan did not issue an insurance policy to the plaintiff, however, and as a result no contractual relationship with the plaintiff existed. *Id.* at *3. Relying on *Davidson*, Judge Caldwell held that the Kentucky Automobile Insurance Plan was fraudulently joined because there was "no contractual relationship between the plaintiffs and KAIP on which to base the bad faith claims." *Id.* This rationale could be applied to claims adjusters, such as Clevinger and Stanley, as well because they do not issue the insurance policy out of which the plaintiffs' bad faith claims arise.

The post-*Davidson* decisions from the Kentucky courts also shed little light on the issue at hand. While no Kentucky appellate court case has directly addressed whether claims adjusters can be held liable for bad faith claims in the wake of *Davidson*, there are analogous cases that arguably lend support to each side. The plaintiffs cite *Quality Signs & Service, Inc. v. Westfield Cos.*, No. 02-CI-1396, 2004 WL 1047914 (Ky. Cir. Ct. Feb. 16, 2004), a trial court decision, as supporting their view that claims adjusters can be subject to bad faith claims even after *Davidson*.[12] There, Quality Signs sued its insurer, arguing the insurer had a duty to defend it in a pending state-court action. *Id.* at *2. Quality Signs also asserted a bad faith claim against Ladegast & Heffner Claims Service, Inc. (L&H), a third-party administrator for the insurer. *Id.* at *4. L&H moved for summary judgment on the claims, arguing that it was not in the insurance business and that the UCSPA only covers insurance companies. *Id.*

The Kentucky Circuit Court rejected these arguments and denied L&H's motion. Regarding L&H's first argument – *i.e.*, that it was not in the insurance business – the Circuit Court held that

---

[12] The plaintiffs also cite *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368 (Ky. 2000), in support of their argument. There, the jury returned a verdict against a claims adjuster and his employer in the amount of $1,100,000 on a UCSPA claim. *Id.* at 374. The insurer appealed the verdict, but the claims adjuster settled before the appeal. *Id.* Thus, that issue was not before the Kentucky Supreme Court when it decided *Farmland*.

L&H performed activities covered by the UCSPA: "the actions forming the basis of Quality Signs' complaint relate to an investigation and coverage determination, which are business activities covered by the Act, and which Ladegast & Heffner does not dispute that it conducted on behalf of Kentucky Fund." *Id.* In doing so, the court distinguished *Davidson*, stating that the self-insured trucking company in *Davidson* did not perform any of the business activities covered by the UCSPA, unlike L&H. *Id.* Though the opinion is not entirely clear on the exact activities performed by L&H, it does reference claim investigation and coverage determination, which appear to be the same type of activities performed by the individual claims adjusters in this case. Thus, *Quality Signs* indicates that bad faith claims against claims adjusters such as Clevinger and Stanley are still viable even after *Davidson*.[13]

For their part, the defendants cite *Kentucky National Insurance Co. v. Shaffer*, 155 S.W.3d 738 (Ky. App. 2004), in support of their interpretation of *Davidson*. In *Shaffer*, a victim of a car accident (Shaffer) brought claims for bad faith and violation of the UCSPA against the insurer (Kentucky National) of the other driver (Coe) after Shaffer's personal injury suit for the car accident itself. *Id.* at 739. The jury returned a verdict for Shaffer on the statutory claim but not on the common law tort claim, and both sides appealed. *Id.* at 740. The Kentucky Court of Appeals reversed because the insurer was not obligated to cover Coe under its insurance policy: "there being no contractual obligation to pay under the present policy, we conclude as a matter of law that Mrs. Shaffer could not maintain an action for bad faith against Kentucky National." *Id.* at 742. The court

---

[13] It appears that the insurer, but not L&H, appealed the decision, and the Court of Appeals affirmed. *Westfield Cos. v. Quality Signs & Serv, Inc.*, No. 04-557, 2005 WL 791363 (Ky. Ct. App. Apr. 8, 2005). The Kentucky Supreme Court denied discretionary review and ordered that the appellate court opinion not be published. *Id.*

relied on *Davidson's* statement that no bad faith cause of action exists absent a contractual obligation in reaching this holding. *Id.* Therefore, the defendants argue, Clevinger and Stanley cannot be held liable because they likewise have no contractual obligation to the plaintiffs. R. 20 at 20. Against this argument, the plaintiffs again raise the distinction between the absence of a contractual obligation versus the absence of a contractual obligation between the plaintiff and defendant. In *Shaffer*, the court found that no contractual obligation existed on the part of the insurer. In the case at hand, however, there was a contractual obligation on the part of the defendant insurers as to Fuel Transport, it just was not with the individual claims adjusters. Under *Davidson*, that distinction arguably is important.

In looking at whether individual claims adjusters such as Clevinger and Stanley can be held liable for bad faith claims under Kentucky law, it is clear that there is significant ambiguity. This ambiguity is accentuated by the fact that the only two courts to have addressed this particular issue since *Davidson* reached opposite conclusions. Because such ambiguities must be resolved in favor of the plaintiffs, as the non-removing party, *Coyne*, 183 F.3d at 493, it cannot be said that the defendants have satisfied their heavy burden of proving fraudulent joinder. Resolving the ambiguities in Kentucky law in favor of the plaintiffs, the Court is satisfied that there is a colorable claim against Defendants Clevinger and Stanley.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** as follows:

(1) The plaintiffs' Motion to Remand, R. 9, is **GRANTED**.

(2) The plaintiffs' Motion for Costs, R. 9, is **DENIED**.

(3) Defendant Larry Clevinger's Motion to Dismiss, R. 24, is **DENIED WITHOUT**

**PREJUDICE**.

(4)	This Matter is **REMANDED** to Knott Circuit Court and shall be **STRICKEN** from the Court's active docket.

This the 16th day of October, 2008.

Signed By:
*Amul R. Thapar* AT
United States District Judge